798 F.2d 469
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jacob A. FRYDMAN, et al., Plaintiffs-Appellants,
v.
Jeffrey FELDMAN, et al., Defendants-Appellees.
 No. 85-3565.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1986.
 
 Before GUY and KRUPANSKY, Circuit Judges, and SPIEGEL,* District Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-Appellants Jacob A. Frydman and Jacob Frydman Co. (Frydman) appeal from the judgment entered in the United States District Court for the Northern District of Ohio, Eastern Division, granting the motion of defendants appellees to stay the proceedings of this action pending arbitration.
 
 
 2
 Previously, by a Stock Purchase Agreement (agreement) executed on February 29, 1984, Frydman contracted to purchase from defendants all of the outstanding stock of Feldman Bros. Produce Co., Inc. and Joseph Feldman, Inc. On February 6, 1985, Frydman filed a complaint against defendants Jeffrey Feldman, Sheldon Feldman, and Ben Reiff. Count one of said complaint alleges that defendants fraudulently induced plaintiffs to enter into the agreement to their detriment. Specifically, plaintiffs allege that defendants falsely and fraudulently represented to them during negotiations and in the agreement itself that all property being purchased would be in working condition; that defendants had actual notice of customers who planned to terminate their relationship with the business, which termination would have a material adverse effect on company sales; that defendants knew that some of the business customers did account for greater than five percent (5%) of the sales; that defendants knew there were pending and threatened claims and litigation involving the business; that defendants knew there were material undisclosed liabilities affecting the business; that during the period from the date of execution of the agreement through the date of closing, defendants secretly intended to (and did) carry on business prior to closing other than in a regular manner and, instead, in a manner intended to destroy the good will of the business; and that defendants, for the same time period, did not intend to (and did not) use their best efforts to comply with all laws and regulations. In addition, Frydman claims defendants deliberately concealed the true financial condition of the business. In count two of their complaint, plaintiffs allege that defendants maliciously destroyed the good will of the business.
 
 
 3
 The District Court granted defendants' motion to stay proceedings pending arbitration pursuant to the written contract between the parties. The Honorable George w. White found that the parties intended the dispute to be covered by the arbitration provision of the stock Purchase Agreement. This Court affirms the judgment of the District Court.
 
 The contract provides in pertinent part:
 
 4
 17. Arbitration. In the event of a controversy between the Shareholders and Purchaser with respect to the liability of the Shareholders or purchaser under and by virtue of the provisions of Section 9, and not otherwise, shall occur the matters shall be settled by Arbitration to be held in the City of Youngstown, Ohio before a panel of three Arbitrators appointed in accordance with the rules of the American Arbitration Association. The decision of the Arbitrators shall be final and binding upon the parties both as to law and to fact, shall be enforceable at law or equity and shall not be appealable to any Court in any jurisdiction. The expenses of the Arbitration shall be shared equally by Purchaser and the Shareholders. No amount shall be deducted from or withheld pending the determination made under the Arbitration and the failure to make payments required under and pursuant to the Promissory Note will constitute a default even though a claim for Arbitration is pending.
 
 
 5
 Frydman argues that Section 9 of the agreement limits the scope of the arbitration clause to disputes with third parties, thereby excluding disputes between "Plaintiffs and Defendants only." Frydman Brief at 8. Section 9 provides in primary part:
 
 
 6
 9. Indemnification b Shareholders. Subject to the limitations set forth in the provisions of Sections 9 and 11 and only to the extent thereof, each Shareholder, his legal representatives, successors or assigns, agrees to severally, but not jointly, indemnify and hold the Purchaser and his successors and assigns harmless from and against any damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees) of any kind or nature whatsoever which may be sustained or suffered by the Purchase as a consequence of a breach of any representation, warranty, liability, covenant or agreement made by the Shareholders herein or in any Lists, Exhibits, Schedules or other Agreements contained herein all of which shall be subject to the limitations set forth in Section 9.1, 9.2, 9.3 and Section 11 hereof; and the Purchaser may after a 'determination', as hereinafter defined, of Sellers [sic] liability, but not otherwise, offset any such damages, liabilities, losses, costs and expenses against indebtedness of the Purchaser or the Cos. to the Shareholders.
 
 
 7
 Plaintiffs maintain that the arbitration clause would apply only to a situation in which they were confronted with a creditor of the business whose claim had been undisclosed by defendants. Because defendants would be obligated in such a case to indemnify plaintiffs under Section 9, if defendants refused, only then would the dispute be arbitrable under Section 17. But plaintiffs' instant claims of fraudulent inducement and malicious destruction of good will, involving no third party claims, they suggest, are not covered by Section 9 and therefore are not arbitrable under Section 17. Defendants argue, on the other hand, that Section 9 expressly provides that they have distinct obligations that run specifically to plaintiffs that give rise to arbitration under Section 17 if a breach is claimed.
 
 
 8
 In our view, the arbitration provision of the Stock Purchase Agreement is broad enough to encompass Frydman's claims. Under Section 9, defendants are liable for "damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees) of any kind or nature whatsoever which may be sustained or suffered by the Purchaser as a consequence of a breach of any representation, warranty, liability, covenant or agreement ...." Each allegation in Frydman's complaint sets forth a breach of a particular Representation and Warranty in the agreement. Therefore, plaintiffs' complaint falls under Section 9's "breach of any representation [or] warranty" and thus is governed by Section 17 and is arbitrable. count one of plaintiffs' complaint details seven representations made by defendants and the subsequent breach thereof. The first claim, that defendants knowingly sold property not in working order, alleges a breach of a Representation and Warranty in Section 4.8, which warrants that all company property is in working condition, ordinary wear and tear excepted.
 
 
 9
 The second claim, that defendants had actual knowledge of customers who planned to terminate their business, violates a Representation and Warranty in Section 4.11, stating that the "Shareholders have no actual knowledge or notice of customers who plan to terminate their business relationship with the Cos. which termination would have a material adverse effect on the Cos.' sales."
 
 
 10
 The third claim, that defendants knew that certain of the business' customers did account for greater than five percent (5%), violates Section 4.9, which warrants that all customers who traditionally have represented more than five percent (5%) of annual sales would be designated with an asterisk on the accounts receivable list.
 
 
 11
 Plaintiffs' fourth claim, that defendants knew that there were both pending and threatened claims and litigation involving the business, stems from the Representation and Warranty in Section 4.15, stating that there is no pending or threatened litigation unless disclosed in a "Litigation List."
 
 
 12
 Plaintiffs' fifth claim, that defendants knew that there were material undisclosed liabilities from the time of execution of the contract to the date of closing, violates a Representation and Warranty in Section 4.16 to the effect that there were no undisclosed liabilities.
 
 
 13
 Plaintiffs' sixth claim, that defendants secretly intended (and did) carry on business prior to the date of closing other than in a regular manner and, instead, in a manner calculated to destroy the good will of the business, suggests a breach of Section 4.19, warranting that, during the aforementioned specific time period, business would be carried on in the ordinary course.
 
 
 14
 Finally, plaintiffs' seventh claim, that defendants purposefully did not use their best efforts to comply with all laws and regulations, violates Section 4.17, which warrants the legality of the conduct of the business.
 
 
 15
 In addition, Frydman's claim that defendants deliberately concealed the true financial condition of the business, suggests a violation of Section 4.4, representing that the financial statements provided by defendants, to the best of their knowledge, "are correct and complete."
 
 
 16
 The holding in Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395 (1967), supports our decision. Prima Paint's arbitration provision called for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof," Id. at 398. The Supreme Court held that this language was broad enough to cover Prima Paint's claim that both the execution and acceleration of the agreement were fraudulently procured. Id. at 406. Notably, in this case the language of the Stock Purchase Agreement regarding arbitration is similar to the language deemed to be appropriately broad in Prima Paint.[1] Moreover, similar to the situation in Prima paint, plaintiffs in this case have not claimed they were fraudulently induced to enter into the arbitration clause itself. Such a claim, according to the Supreme Court, involves the "making" of the arbitration agreement and may be adjudicated by the federal court rather than referred to arbitration. Id. at 404. Plaintiffs in this case claim that they were fraudulently induced to enter into the contract generally, not the arbitration provision specifically. Also, it is important to keep in mind the general federal policy favoring arbitration. For example, in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983), the Supreme Court noted that "any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration." we thus conclude that Count one of plaintiffs' complaint, and the seven claims therein that embody fraud in the inducement, is arbitrable.
 
 
 17
 As mentioned, plaintiffs also have brought a second count that alleges malicious destruction of the good will of the business. Contrary to plaintiffs claim that the District Court did not address Count two, it is obvious that the trial judge included same in its reference to plaintiffs' complaint alleging "breach of representations relating to the condition of the business." See Joint Appendix at 48. The District Court held that both Counts one and two fell within the arbitration provision in the agreement between the parties. We agree, and, for reference, add that Count two alleges a breach of a Representation and Warranty in Section 4.19 of the agreement, warranting that the business will be carried on in the ordinary course. Plainly it, too, is arbitrable. Thus it is not necessary to remand Count two for further proceedings.
 
 
 18
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, District Judge for the United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Section 17 of the agreement in this case calls for arbitration of a controversy between the Defendant-Shareholders and Plaintiff-Purchaser "under and by virtue" of Section 9, which defines the par&meters of liability:
 [E]ach Shareholder ... agrees to ... indemnify and hold the Purchaser ... harmless from and against any damages, liabilities, losses, costs and expenses ... of any kind or nature whatsoever which may be sustained or suffered by the Purchaser as a consequence of a breach of any representation, waranty....